IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 24-CR-259-JFH |
| JERRY CHARLES CREEK, JR., | |
| Defendant. | |

## OPINION AND ORDER

Before the Court are two notices filed by the United States of America ("Government"): a Notice of Intent to Offer Evidence Pursuant to Rule 404(b) ("404 Notice") [Dkt. No. 40] and a Notice of Intention to Impeach Defendant Pursuant to Federal Rule of Evidence 609(a) and (b) ("609 Notice") [Dkt. No. 41].[1] Defendant Jerry Charles Creek, Jr. ("Defendant") did not object to the notices or otherwise respond. Nonetheless, the Court will evaluate the admissibility of the evidence below.

## BACKGROUND

### I. Procedural Background

On August 6, 2024, Defendant was charged by indictment with six (6) counts: Counts One and Three: Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(8); Count Two: Assault Resulting in Serious Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(6); Count Four: Assault with a Dangerous Weapon with Intent to do Harm in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(3); Count Five: Aggravated Sexual Abuse by Force and

---

[1] The Government also provided sealed exhibits [Dkt. No. 43] in support of its 404 Notice, which the Court has reviewed.

Threat in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 2241(a); and Count Six: Assault with Intent to Commit Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(1). Dkt. No. 2.[2] This case is set for trial on the Court's September 29, 2025 jury trial docket. Dkt. No. 34.

## II. Factual Background[3]

### A. Charged Conduct

The charged conduct is comprised of three (3) separate instances all involving Defendant's former intimate/dating partner, A.J. Dkt. No. 40 at 2. Defendant and A.J. began their relationship in June 2023. *Id*. The first charged instance occurred from November 10-12, 2023, at Defendant's home located in a rural area in the Northern District of Oklahoma. *Id*. It is alleged that on Friday, November 10, 2023, Defendant accused A.J. of cheating on him. *Id*. From there, and throughout the remainder of the weekend, Defendant violently assaulted A.J. by striking her with a barbell, strangling her with both hands, slamming her on the ground, dragging her, ripping her hair, kicking her with steel-toed boots, forcing her to give him "a blow-job," and committing various other acts of verbal and physical abuse all while keeping her from leaving. Dkt. No. 40 at 2-3. On a few occasions over the weekend, Defendant told A.J. that he would drive her home, but upon arriving

---

[2] A Superseding Indictment was filed on August 20, 2025 charging Defendant with nine counts as follows: Counts One and Three: Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(8); Counts Two and Seven: Assault Resulting in Serious Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(6); Count Four: Assault with a Dangerous Weapon with Intent to do Harm in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(3); Counts Five and Nine: Aggravated Sexual Abuse by Force and Threat in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 2241(a); and Count Six: Assault with Intent to Commit Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(1); and Count Eight: Kidnapping in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 1201(a)(2). Dkt. No. 47.

[3] The Court accepts the Government's recitation of the facts only for purposes of determining the admissibility of the evidence described in the notices.

to her house, he would refuse to let her out of the car and would drive her back to his house. *Id*. at 3. Only after Defendant left his house for an extended period of time was A.J. able to escape and get treatment at the Claremore Indian Hospital, where she was treated for injuries to her jaw, scalp, knee, hip, buttocks, and ribs. *Id*.

The second charged instance occurred on March 26, 2024. Dkt. No. 40 at 4. It is alleged that on this day Defendant accused A.J. of cheating on him with a man in her neighborhood. *Id*. Defendant became angry and began strangling A.J. until she lost consciousness. *Id*. After regaining consciousness, Defendant hit A.J. in the face, headbutted her, and punched her nose until it bled. *Id*. He then pulled A.J. down the front steps of his house, ripped off her jacket, and struck her with a baseball bat on her knees and back. Dkt. No. 40 at 4. Defendant also shoved the baseball bat between her legs, but the jeans she was wearing at the time prevented penetration. *Id*. After the abuse, Defendant forced A.J. to "give him a 'blow job,'" which A.J. did to placate Defendant and stop the assault. *Id*. The next day, A.J. went to the Claremore Indian Hospital for treatment where she was diagnosed with several injuries to the head, face, knees, and elbow. *Id*.

The third charged instance occurred on April 11, 2024. Dkt. No. 40 at 4. On this day, A.J. went to a bar with a male friend and told Defendant about her plans. *Id*. It is alleged that Defendant showed up to the bar and was "pissed" because A.J. was there without him and was in the company of another man. *Id*. at 4-5. Defendant told A.J. to leave with him and she did. *Id*. at 5. Defendant "drove like a maniac" back to A.J.'s house and headbutted her in the car. Dkt. No. 40 at 5. After arriving at A.J.'s house, Defendant and A.J. argued in her front yard before she went into her house. *Id*. The next thing A.J. remembers is waking up to her house on fire. *Id*. Neighbors pulled A.J. out of her home through a window and called for help. *Id*. A.J. was taken to the hospital and was diagnosed with several injuries which were not present prior to the fire, including lacerations

3

to her head and hand and fractured vertebrae.  Dkt. No. 40 at 5.

### B. Other Act Conduct

#### 1. A.J.

The Government intends to introduce at trial evidence of Defendant's other acts involving A.J., including his escalating use of threats and force against A.J. prior to the first charged offense and immediately preceding the remaining charged offenses, as well as other instances that occurred between the charged offenses where Defendant controlled and abused A.J. because he believed she was cheating on him.  Dkt. No. 40 at 1.  Specifically, the Government seeks to introduce evidence that beginning in September or October 2023, Defendant began displaying jealous and possessive behavior toward A.J.  Dkt. No. 40 at 2.  Defendant isolated A.J. from her family and friends and began accusing her of cheating on him.  *Id*.  Defendant's verbal abuse escalated to physical abuse, initially by shoving her or grabbing her arm or chin.  *Id*.  Defendant's behavior escalated again to strangulation, headbutting, and dragging A.J. by her hair.  *Id*.  It is alleged that the first charged instance occurred shortly after this escalation.

Following the first charged instance, on December 15, 2024, Defendant showed up to A.J.'s workplace.  Dkt. No. 40 at 3.  Defendant demanded that A.J. leave with him to go confront a man that he believed A.J. was cheating on him with.  *Id*.  As Defendant and A.J. walked to her car, co-workers watched as the two argued and saw Defendant smack a cup out of A.J.'s hand.  *Id*.  When A.J. attempted to open her car door, Defendant slammed it shut several times.  *Id*.  A.J. was eventually able to open her car door and get in, but Defendant blocked the door from closing so that she was unable to leave.  Dkt. No. 40 at 3.  After allowing her to finally close her door, Defendant kicked the door while she was inside.  *Id*.  After witnessing this, several co-workers called the police requesting a wellness check on A.J.  *Id*.  One co-worker actually reported that

A.J. had been abducted from work by Defendant. *Id*. After this day, Defendant began calling A.J. at work incessantly, accusing her of having sex with other men at her workplace. Dkt. No. 40 at 4. A.J. eventually quit her job. *Id*.

Finally, on January 15 and March 9, 2024, after accusing A.J. of cheating, Defendant intimidated and coerced A.J. to pose for nude photographs. Dkt. No. 40 at 4. These photographs, which portray A.J. visibly terrified, were found on Defendant's phone. *Id*.

2. **S.B.**

After Defendant's relationship with A.J., he began dating another woman, S.B., in November 2024. Dkt. No. 40 at 5. It is alleged that Defendant also became controlling and possessive of S.B., including frequently accompanying her to her work. *Id*. On December 20, 2024, S.B. reported that Defendant became upset with her and threw her across the kitchen, causing her to hit her back against the cabinets and stove, injuring her. *Id*. On December 25, 2024, Defendant again became upset with S.B., grabbed and twisted her left wrist, and threatened to break her jaw "so that she would listen to him and behave correctly." *Id*. The next morning, S.B. sought treatment from Hillcrest Hospital where she was accompanied by an officer with the Tulsa Police Department. Dkt. No. 40 at 5. S.B. was treated for bruising on her left temple, a 6-inch abrasion on the left side of her back, and injury to her left elbow and left shin. *Id*.

C. **Defendant's Prior Convictions**

Defendant has a criminal history comprised of six (6) felony convictions:

1. Wagnor County Case No. CF-2004-07; Assault and/or Battery with a Dangerous Weapon; sentenced to 25 years in the Oklahoma Department of Corrections ("DOC"), released September 8, 2020;

2. Wagnor County Case No. CF-2004-07; Obstructing Officer, Receiving/ Possessing/ Concealing Stolen Vehicles; sentenced to 10 years DOC; sentence expired October 10, 2008;

5

3. Wagnor County Case No. CF-2004-07; Obstructing Officer; sentenced to 8 years DOC; released April 18, 2008;

4. Tulsa County Case No. CF-2003-4429; Possession of Firearm After Former Conviction of a Felony; sentenced to 10 years DOC; sentence expired December 1, 2008;

5. Tulsa County Case No. CF-2001-714; Possession of CDS (Marijuana AFCF); sentenced to 10 years DOC; sentence expired August 26, 2008;

6. Tulsa County Case No. CF-2001-714; Possession/Furnishing of Precursor; sentenced to 10 years DOC; sentence expired August 14, 2008.

Dkt. No. 41 at 2-3. The Government notes that Defendant went to prison for all his DOC sentences on January 4, 2005 and was released following the end of all of his sentences on September 8, 2020. *Id*. at 3. While some of Defendant's sentences ended more than ten (10) years ago, he was not ultimately released from prison on these convictions until about five (5) years prior to the instant trial. *Id*.

## DISCUSSION

### I. The Government's 404 Notice [Dkt. No. 40]

At trial, the Government intends to introduce the following other act evidence in its case-in-chief: (1) Defendant's escalating use of threats and force against A.J. before the first charged assault and immediately preceding the remaining charged offenses; (2) instances between the charged offenses when Defendant controlled and abused A.J. because he believed she was cheating on him; and (3) Defendant's assault of S.B., a woman Defendant began dating after his relationship with A.J. ended. The Government argues that this other act evidence is admissible as res gestae, or intrinsic, evidence, or is otherwise admissible under Rule 404(b) to establish Defendant's motive and intent to commit the charged crimes, as well as to counter any assertion of consent, mistake, or accident.

Rule 404(b) provides, in pertinent part:

6

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> …
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). Courts in the Tenth Circuit begin a Rule 404(b) analysis with a determination of whether the relevant evidence is intrinsic or extrinsic to the charged conduct, as Rule 404(b) does not apply to intrinsic evidence. *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)). Evidence is considered "intrinsic" when it is inextricably intertwined with the charged conduct, meaning it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury;" contrastingly, evidence is "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Id.* (quoting *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009)). The Tenth Circuit has held that evidence can be intrinsic even if it occurred over a period of several years prior to the charged offense. *See United States v. Collins*, 97 Fed. App'x 818, 823-34 (10th Cir. 2004) (unpublished); *see also United States v. Nieto Regalado*, 19-CR-0114-CVE, 2019 WL 5783730, at *11 (N.D. Okla. Nov. 6, 2019) (holding prior acts that occurred two years prior to indicted conduct were intrinsic). Intrinsic evidence "should be approached with caution." *Collins*, 97 Fed. App'x at 824 n.7.

If the Court determines evidence is intrinsic, Rule 404(b) does not apply. However, the evidence "remains subject to the requirement of FRE 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Irving*, 665 F.3d at 1212. If the Court determines the evidence at issue is not intrinsic, the Rule 404(b) analysis continues and the Court must consider four factors: (1) whether the evidence is offered for a proper purpose, (2) its

7

relevancy, (3) whether the probative value of the evidence is substantially outweighed by the prejudicial effect, and (4) the availability of a limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

The Government first argues that evidence regarding Defendant and A.J.'s relationship, including Defendant's escalating use of threats and force against A.J., constitutes res gestae evidence. Dkt. No. 40 at 6. Specifically, the Government argues that this information is necessary background information to explain the context of Defendant and A.J.'s relationship and what led up to Defendant's actions in the charged conduct. Dkt. No. 40 at 7. The Government argues that without this information, A.J.'s testimony would be incomplete and confusing for the jury. *Id*. The Government also argues that this evidence is necessary to prove that Defendant and A.J. were intimate/dating partners, an element of the charged strangulation offenses. *Id*.

The Court agrees. Evidence concerning the history and evolution of Defendant and A.J.'s relationship is directly related to the factual circumstances of the charged conduct and provides necessary contextual and background information for the jury regarding the nature of the relationship. Specifically, Defendant's escalating conduct, beginning first with jealousy and possessiveness, then escalating to accusations of cheating and verbal abuse, then escalating to shoving and grabbing, and then escalating to strangling and headbutting, all lead up to and bleed into the charged conduct. The Court agrees that a presentation of the charged conduct without this evidence would be incomplete and would confuse the jury and, therefore, agrees that this evidence constitutes res gestae evidence.

Because this evidence is intrinsic, analysis under Rule 404(b) is not necessary. However, the Court must still consider Rule 403 and determine whether the evidence's probative value is

substantially outweighed by unfair prejudice.

"[O]ur law favors admission of all relevant evidence not otherwise proscribed [and] exclusion under [Rule 403] is an extraordinary remedy that should be used sparingly." *Irving*, 665 F.3d at 1213 (emphasis removed); *Murry*, 31 F.4th at 1291 (same). "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* "In weighing the probative value of evidence against unfair prejudice, district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Murry*, 31 F.4th at 1291 (internal quotations omitted).

Affording the evidence the weight it must, the Court is confident that Rule 403 does not bar admission of this intrinsic evidence. The evidence is highly probative of the abusive and violent nature of Defendant and A.J.'s relationship. While prejudicial, the evidence is not unduly so, because the emotional impact of the evidence is directly related to its relevancy: it demonstrates Defendant's escalating aggression toward A.J. For these reasons, the Court finds that the evidence's probative value is not substantially outweighed by unfair prejudice and is therefore admissible.

Next, the Government argues that evidence of the incident at A.J.'s workplace and evidence of the nude photographs of A.J. are admissible under Rule 404(b) to show Defendant's intent and absence of mistake or accident. Dkt. No. 40 at 7-8. Specifically, the Government argues that this evidence demonstrates a pattern of abuse that is probative of Defendant's state of mind during the charged conduct. *Id.* at 9. Because several of the charged offenses require a showing of intent, the Government argues that evidence of these other instances of abuse and manipulation

are highly relevant to prove intent and to explain Defendant's motive. *Id.* at 9-10.

The Court finds that the Government has offered this evidence for a proper purpose: to show Defendant's intent to commit the charged offenses and to show an absence of mistake or accident in causing injury to A.J. The Court also finds that this evidence is relevant as it has a tendency to make Defendant's intent to do bodily harm to A.J. more probable than it would be without the evidence. Specifically, these other instances show that that the charged instances were not isolated incidents, but part of an ongoing pattern of manipulation, control, isolation, and abuse. For example, evidence of the nude photographs tends to show that even the sexual component of Defendant and A.J.'s relationship was marked by manipulation, control, and abuse, negating a defense of consent as to the aggravated sexual abuse charge. The instances further demonstrate Defendant's frame of mind and motivation for the charged conduct, including his apparent preoccupation with A.J. cheating. These other acts are also relevant as they occurred during the course of Defendant and A.J.'s relationship and occurred between the charged instances.

The Court also finds that the probative value of this evidence is not substantially outweighed by the prejudicial effect. While this evidence is damaging to Defendant's case, it is not any more so than the charged conduct and, therefore, is not likely to suggest decision on an improper basis. Finally, the Court can and will provide a limiting instruction upon Defendant's request should this evidence be introduced at trial.

Finally, the Government argues that evidence of Defendant's abuse of S.B. is also admissible under Rule 404(b) to show Defendant's intent to commit the charged offenses and to show an absence of mistake or accident. Dkt. No. 40 at 11. Specifically, the Government argues that the fact that Defendant got into a relationship with and abused another intimate/dating partner just months after his relationship with A.J. is highly probative of his intent to abuse A.J. *Id.* The

Government also argues that this evidence is relevant because the injuries of S.B. and A.J. at the hands of Defendant are significantly similar, including injuries to the face, elbow, and back.

The Government has offered the evidence of Defendant's abuse of S.B. for a proper purpose: to show Defendant's intent to commit the charged offenses and to show an absence of mistake of accident. The Court finds that this evidence is relevant as it makes Defendant's intent to do bodily harm to A.J. more probable than it would be without the evidence. Specifically, this evidence counters an argument of self-defense or attempts to place blame for Defendant's behavior on A.J.'s conduct. Uncharged, unrelated crimes or bad acts that happen subsequent to the charged offenses may be probative to show motive and intent if the uncharged acts are similar to the charged offenses and sufficiently close in time. *See e.g., United States v. Olivo,* 80 F.3d 1466, 1468–69 (10th Cir. 1996); *United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989). Eight (8) months following the last charged instance in the instant case, Defendant abused his new girlfriend, S.B., causing injuries to her face, elbow, and back that required medical attention. The injuries are consistent with and close in time to injuries experienced by A.J. The Court also finds that the probative value of this evidence is not substantially outweighed by the prejudicial effect. While this evidence is damaging to Defendant's case, it is not any more so than the charged conduct and, therefore, is not likely to suggest decision on an improper basis. Finally, the Court can and will provide a limiting instruction upon Defendant's request should this evidence be introduced at trial.

For these reasons, the Court finds that the evidence described in the Government's 404 Notice [Dkt. No. 40] is ADMISSIBLE.

## II. The Government's 609 Notice [Dkt. No. 41]

Evidence of a prior felony conviction "must be admitted in a criminal case in which the

witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1). However, "if more than 10 years have passed since the witness's [*sic*] conviction or release from confinement for it, whichever is later," the probative value must *substantially* outweigh the prejudicial effect and the offering party must give its adverse party reasonable written notice of its intent. *Id.* at (b). A "special balancing test" is used for defendant-witnesses because these litigants face "a unique risk of prejudice—i.e., the danger that convictions that would be excluded under Rule 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes." *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Fed. R. Evid. 609, advisory committee's notes to the 1990 amendments). This balancing test has five factors:

> (1) the impeachment value of the defendant's prior crimes;
> (2) the dates of the convictions and the defendant's subsequent history;
> (3) the similarity between the past crime and charged crime;
> (4) the importance of the defendant's testimony; and
> (5) the centrality of the defendant's credibility at trial.

*Id.*

### A. Consideration of the Smalls factors

#### 1. Impeachment Value

"In evaluating the first factor, the impeachment value of the defendant's prior crimes, a prior conviction is more likely to be admissible where it involves a crime that bears on defendant's credibility." *United States v. Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1, *2 (N.D. Okla. June 4, 2021). However, even if a defendant's prior convictions do not involve dishonesty or false statement, a defendant still may be impeached. *Id*. (citing *United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015), aff'd, 659 F. App'x 461 (10th Cir. 2016) ("[I]t is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he

12

testifies at trial."); *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977)).

The Court finds that Defendant's prior conviction for Receiving/Possessing/Concealing Stolen Vehicles involves characteristics that go to Defendant's capacity for truthfulness. *See Ahaisse*, 2021 WL 2290574 at *2 (finding that accessory after the fact to murder is a crime that involves characteristics that go to the capacity for truthfulness because it requires concealment). This factor weighs in favor of admission as to this conviction. Defendant's other prior convictions for Assault and Battery with a Dangerous Weapon, Obstructing an Officer, Possession of Firearm After Former Felony Conviction, Possession of Controlled Substance, and Possession/Furnishing of Precursor, however, do not involve characteristics that go to Defendant's capacity for truthfulness. Therefore, this factor does not weigh in favor of admission as to these convictions.

   **2. Temporal Proximity**

Convictions more than ten years old are presumptively excluded, while convictions within the preceding ten years are considered on a case-by-case basis. *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2. However, the "probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved." *Id*. (internal citations omitted).

All of Defendant's prior convictions occurred more than ten (10) years ago. However, Rule 609 makes clear that the Court may look to the date Defendant was released from confinement in considering temporal proximity. Defendant was released on September 8, 2020 after completing the cumulative sentences on all his convictions. Because Defendant was not released from imprisonment on any of his prior convictions until approximately five (5) years ago, the Court finds that the probative value of his convictions remains and this factor weighs in favor of

admitting his prior convictions for purposes of impeachment.

### 3. Similarity

"The third factor, which compares the similarity of the current charged crime to the prior conviction, weighs against admitting the prior conviction for impeachment if the crimes are similar." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (internal citations omitted). "The greater the similarity of the charged crime to the past crime, the higher the likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose–impeachment of credibility." *Id.* (citing *United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014); *United States v. Chaco*, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011) ("The caselaw suggests that past felonies are most prejudicial in cases where the felonies are most similar to the crimes charged."); *United States v. Willis*, No. 14-CR-64-JED, 2014 WL 2589475, at *2 (N.D. Okla. June 10, 2014) (same)).

Defendant's prior conviction for Assault and Battery with a Dangerous Weapon is identical to the charged crime of Assault with a Dangerous Weapon. Therefore, this factor weighs against admissibility as to this conviction. The remaining convictions, however, are plainly dissimilar to the charged crimes and, therefore, this factor weighs in favor of admissibility as to these convictions.

### 4. Importance of Testimony

"In considering the fourth factor, the importance of Defendant's testimony, the Court must determine whether the apprehension of potential impeachment by prior convictions will cause Defendant to abstain from testifying, thus damaging his right to a full defense." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3 (internal citations omitted). "If the prior conviction is incredibly damaging or prejudicial, that counsels against admitting the prior conviction." *Id.*

Defendant is presently charged with Assault of an Intimate/Dating Partner by Strangling, Assault Resulting in Serious Bodily Injury, Assault with a Dangerous Weapon with Intent to do Bodily Harm, Aggravated Sexual Abuse by Force and Threat, and Assault with Intent to Commit Murder. The Court finds that Defendant's prior convictions for Receiving/Possession/Concealing Stolen Vehicles, Assault and Battery with a Dangerous Weapon, Obstructing an Officer, Possession of Firearm After Former Felony Conviction, Possession of Controlled Substance, and Possession/Furnishing of Precursor are not particularly prejudicial in light of the current alleged offenses. This factor weighs in favor of admitting Defendant's prior convictions for purposes of impeachment.

### 5. Centrality of Credibility

"When evaluating the final factor, the centrality of defendant's credibility at trial, the Court must consider whether defendant's credibility is a material consideration for the jury. Impeachment by prior conviction is not as important if defendant's anticipated testimony will not be central to a jury determination–*e.g.,* if defendant's testimony is corroborated by other sources." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3. By contrast, "where a case is reduced to a swearing contest between witnesses, the probative value of a conviction is increased." *Id*. (citing *Caldwell*, 760 F.3d at 288).

While evidence in this case is likely to include medical reports, cell phone records, photographs, and other physical evidence, a significant portion of this case will likely rely on witness testimony. For this reason, the Court finds that Defendant's credibility will be central at trial. This factor weighs in favor of admitting Defendant's prior convictions for purposes of impeachment.

### B. Rule 609(a)(1)(B) Balancing

Following a review of *Smalls* factors, the Court must determine "whether, in light of those factors, the probative value of the evidence outweighs its prejudicial effect." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *4 (citing Fed. R. Evid. 609(a)(1)(B)). After reviewing the *Smalls* factors, the Court finds that the probative value of Defendant's prior convictions for Receiving/Possession/Concealing Stolen Vehicles, Obstructing an Officer, Possession of Firearm After Former Felony Conviction, Possession of Controlled Substance, and Possession/Furnishing of Precursor outweigh any potential prejudicial effect. While factor one—impeachment value—weighs against admissibility as to some of these prior convictions, "it is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (citing *United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015), aff'd, 659 F. App'x 461 (10th Cir. 2016)). All other factors weigh in favor of admissibility as to these convictions. For this reason, the Court finds that Defendant's prior convictions for Receiving/Possession/Concealing Stolen Vehicles, Obstructing an Officer, Possession of Firearm After Former Felony Conviction, Possession of Controlled Substance, and Possession/Furnishing of Precursor are admissible for impeachment purposes.

However, the Court finds that the probative value of Defendant's prior conviction for Assault and Battery with a Dangerous Weapon does not outweigh the prejudicial effect. Because this prior conviction is identical to one of the offenses currently charged, the Court finds that there is a higher likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose–impeachment of credibility. This conviction also holds little

impeachment value, making factor one weigh against admissibility. Considering that five (5) other prior convictions are admissible and may be used to impeach Defendant's credibility and two (2) of the factors weigh against admissibility, including the similarity factor, the Court finds that this conviction should be inadmissible.

For these reasons, the Court finds that Defendant's prior convictions for Receiving/Possession/Concealing Stolen Vehicles, Obstructing an Officer, Possession of Firearm After Former Felony Conviction, Possession of Controlled Substance, and Possession/Furnishing of Precursor are admissible for impeachment purposes and Defendant's prior conviction for Assault and Battery with a Dangerous Weapon is inadmissible.

## CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's Notice of Intent to Offer Evidence Pursuant to Rule 404(b) [Dkt. No. 40] is ADMISSIBLE.

IT IS FURTHER ORDERED that the evidence described in the Government's Notice of Intention to Impeach Defendant Pursuant to Federal Rule of Evidence 609(a) and (b) [Dkt. No. 41] is ADMISSIBLE IN PART AND INADMISSIBLE IN PART as set forth in this Order.

Dated this 22nd day of August 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE